UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DENNIS MISHLER,

        Plaintiff,

                                                  Case Number 06-10149-BC

v.                                              Honorable Thomas L. Ludington

METROPOLITAN LIFE INS. CO.,
a Foreign Insurance Company,

        Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
TO REVERSE AND DENYING DEFENDANT'S MOTION TO AFFIRM
THE PLAN ADMINISTRATOR'S DENIAL OF BENEFITS**

Plaintiff Dennis Mishler elected to participate in a long-term disability benefits plan, an employee welfare benefits plan under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, *et seq*., administered by Defendant Metropolitan Life Insurance Company. After an initial award of benefits, Defendant determined that Plaintiff's condition no longer met its definition of "disability" and, so, he could no longer receive long-term disability benefits. Plaintiff appealed, and Defendant reviewed and upheld its denial of benefits. Plaintiff sought review of that denial in this Court. The Court has considered the parties' submissions and now concludes that Defendant's denial of benefits was arbitrary and capricious.

I.

Plaintiff worked for Sears Roebuck as a service technician from 1971 to 2000. On December 1, 2000, he stopped working due to herniated discs that caused pain and reduced his mobility. Administrative Record (AR) at 174, 182. Initially, Plaintiff received short-term disability payments

until April 20, 2001. AR at 151, 218. On March 28, 2001, Plaintiff applied for long-term disability benefits available through his employer.

Defendant is the claims administrator for Sears' long-term disability plan, which, as noted above, is governed by ERISA. Plaintiff paid to participate in the plan. AR at 235 (stating that "[y]our Long Term Disability Benefits are paid for by you."). Plaintiff submitted a claim for disability benefits on March 28, 2001, which included the following documentation: (1) the evaluation of Plaintiff's treating physician, Dr. James Greenwood from March 26, 2001, supplemented by diagnostic and treatment notes, x-ray reports, and referrals; AR at 169-181; (2) Plaintiff's manager's description of his job requirements, dated March 26, 2001; AR at 190-191; and (3) Plaintiff's claim statement of March 28, 2001, which includes a list of then-current prescriptions. AR at 184-189.

Dr. Greenwood concluded that Plaintiff could intermittently sit for one hour, stand for one hour, and walk for three hours. AR at 170. He stated that Plaintiff could not climb, twist, stoop, reach above shoulder level, or lift more than 50 pounds. *Id*. Dr. Greenwood recommended that Plaintiff should not return to work because of his continued pain and inability to lift the required weight or to bend or twist. *Id*. Defendant also appears to have requested that Dr. Greenwood complete a form evaluating Plaintiff's physical capacities, though the record does not reflect a completed form. AR at 192-196.

On April 17, 2001, Defendant authorized long-term disability benefits for Plaintiff, effective April 21, 2001. AR at 158. On September 19, 2001, Dr. Greenwood submitted another attending physician form, in which he indicated that Plaintiff could now intermittently sit, stand, and walk for two hours each. AR at 130. The limitations on his range of motion and lifting remained unchanged,

but he stated that Plaintiff could work six hours a day. *Id.* On November 13, 2001, Dr. Greenwood evaluated Plaintiff, stating that Plaintiff "is not a good candidate for surgery at this time." AR at 120. Dr. Greenwood concluded that the pain in Plaintiff's neck prevented him from fulfilling his job, which included lifting televisions and reaching garage door openers to complete repairs. *Id.*

On December 20, 2001, Defendant had an independent physician consultant, Dr. Mark Moyer, review Plaintiff's claim, based on the records in Plaintiff's file. AR at 115-116. Without examining Plaintiff, Dr. Moyer reviewed and summarized the materials submitted by Dr. Greenwood, including the reports from two neurologists. *Id.* Dr. Moyer noted several deficiencies in the records. Examples of those purported deficiencies include the following: (1) the neurologists did not describe muscle denervation, range of motion, or strength; (2) insufficient evidence or documentation that the limitations on sitting, standing, or walking would clearly develop from a problem in Plaintiff's neck and arms; and (3) insufficient documentation that his symptoms were not severe enough for surgery. *Id.* Dr. Moyer introduced the idea that Plaintiff could perform "medium level" work, though Dr. Moyer did not appear to take exception with Dr. Greenwood's conclusion that Plaintiff should limit himself to six hours a day and otherwise respected the treating physician's limitations. *Id.* Dr. Moyer concluded:

> The records would support that [Plaintiff] remains capable of working at a medium level job with the avoidance of overhead work in the face of his documented cervical abnormalities seen on MRI scan. The records additionally support that [Plaintiff's] physicians appear to be watching him for the development of additional neurological signs and symptoms rather than aggressively treating either his cervical disease or his carpal tunnel. [Plaintiff] remains capable of returning to medium level work with the avoidance of overhead tasks as described.

AR at 116.

On January 23, 2002, Defendant denied Plaintiff's claim for long-term disability, relying on the analysis of Dr. Moyer. AR at 111-112. Defendant identified four positions within "medium work capacity," as suggested by its vocational rehabilitation consultant: appliance-service supervisor, service supervisor (leased machinery and equipment), manager in a retail store, and manager in a department. AR at 112. Yet Plaintiff's initial claim for long-term disability benefits stated that he had no supervisory experience. AR at 184. In his claim, he represented that his 30-year tenure with his employer included such responsibilities as electronics and television service, road service technician, and some repairs to laundry and cooking equipment. *Id*.

On February 11, 2002, Dr. Greenwood completed a physical capacities evaluation for Plaintiff's social security claim, emphasizing Plaintiff's need to alternate his position every 30 minutes and reciting limitations on lifting and his range of motion. AR at 105-110. Dr. Greenwood also stated in that evaluation that Plaintiff cannot use a ladder and that Plaintiff experiences severe pain sufficient to interfere with his work, sleep, and daily living. *Id*. Dr. Greenwood listed Plaintiff's diagnosis as a disc herniation with superior extrusion. AR at 108.

In a letter dated February 13, 2002, Plaintiff objected to Defendant's conclusions in its denial of benefits. AR at 101, 103. He included Dr. Greenwood's evaluation of February 11, 2002 from his social security claim. Plaintiff flagged several concerns, such as (1) that the independent physician consultant ignored the diagnosis of a central disc herniation with superior extrusion; (2) that the reviewer misconstrued the neurologist's report; and (3) that the reviewer failed to grasp the intermittent nature of Plaintiff's ability to work and other limitations. AR at 101. On February 22, 2002, Defendant reinstated his benefits. AR at 97.

On July 22, 2002, Defendant received a Social Security disability decision fully in his favor. AR at 75-80, 82-85. Under the long-term disability benefit plan, Plaintiff had an obligation to repay disability benefits based on possible eligibility for social security benefits. AR at 242-243. Plaintiff also had an obligation under the disability policy to apply for the offsetting social security benefits. AR at 248. In September and November 2002, Defendant contacted and then resolved (with Plaintiff's full compliance) the matter of its overpayment of Plaintiff's benefits, due to the social security benefits that he received. AR at 71-72, 65-67.

In an attending physician statement from October 17, 2002, Dr. Greenwood noted the same diagnosis of a herniated disc (with symptoms of numbness and weakness in Plaintiff's arms and neck) and repeated the same limitations on range of motion and lifting. AR at 68-70. He stated that Plaintiff could work six hours a day but that he advised against returning to work. AR at 69. He added that Plaintiff's "pain and limitation of range of motion ha[d] not improved." *Id*. On November 18, 2002, Defendant advised Plaintiff that it was reviewing his disability claim and requested all current medical information from his doctor. AR at 63-64.

On January 2, 2003, Defendant had another independent physician consultant, Dr. Robert Porter, review Plaintiff's file. AR at 55-56. Dr. Porter concluded, based on Dr. Moyer's report and any subsequent submissions from Dr. Greenwood, the following:

> The information in the records is consistent with Dr. Moyer's evaluation of the ability to lift and work at a medium work level. Dr. Moyer's evaluation appears to be consistent with Dr. Greenwood's estimation of ability to lift up to 50 pounds which is medium work although Dr. Greenwood estimated the total work at 6 hours per day. The information in the records does not support ongoing work restrictions to 6 hours per day. There is no indication that [Plaintiff] has a condition that would affect his endurance. He does have diabetes mellitus but diabetes is common in the general working population. Dr. Moyer and Dr. Greenwood both estimated his ability to lift 50 pounds and this would attest to the fact that the pathology is not significant that would make it dangerous for him to work at a medium work level.

> The findings of the small left sided disc herniation at C4-5 and degenerative disc disease with moderate stenosis and central disc herniation with extrusion at C6-7 are consistent with degenerative disc disease of the neck. The information does not indicate that he has a condition that would benefit from surgery and the EMG/NCV study did not indicate findings consistent with cervical radiculopathy. Due to the findings of electrical evidence for carpal tunnel syndrome it may be prudent to avoid highly repetitive assembly line type work, however, frequent use of his upper extremities is appropriate.
>
> The information supports abilities outlined by Dr. Greenwood and Dr. Moyer on the full time basis eight hours per day, forty hours per week.

AR 55-56.

On January 9, 2003, Defendant sent Dr. Greenwood a letter including the reports from Drs. Moyer and Porter, requesting his comments and objective medical evidence to support any disagreement. AR at 57. Defendant also indicated that no response by a set date would indicate his agreement with their findings. *Id.* The record does not reflect that Dr. Greenwood received this communication, nor does it reflect that Dr. Greenwood responded to this letter from Defendant by the deadline. On March 12, 2003, a transferable skills analysis identified the same four positions already suggested as consistent with Plaintiff's education, training, and experience. AR at 37-38.

On March 25, 2003, Defendant sent Plaintiff a letter indicating that his benefits were terminated, effective April 20, 2003. AR at 52-54. Defendant there stated: "The consultant's [*sic*] reviews are consistent with Dr. Greenwood's assessment above. However the consultants [*sic*] review indicates that you have the ability to perform medium level work on a full-time basis, eight hours per day." AR at 53. Defendant next noted that Dr. Greenwood did not respond, and therefore it concluded that he agreed with the reviewing physicians. *Id.*

On April 8, 2003, Plaintiff wrote to contest Defendant's decision, asserting that Dr. Greenwood stated that Plaintiff's condition was unchanged and without improvement. AR at 42.

On that same date, Dr. Greenwood wrote to Defendant, referring to his previous statements of August 23, 2001 and October 17, 2002 and reiterating that Plaintiff had not improved. AR at 46.

On June 20, 2003, Defendant had a third physician consultant, Dr. Amy Hopkins, review Plaintiff's file. AR at 34-35. After reciting Plaintiff's history based on the documentation submitted from and by Dr. Greenwood, Dr. Hopkins reached the following conclusion:

> [Plaintiff] is presumably [out of work] due to neck [symptoms]. [Plaintiff] reportedly has two [herniated nucleus pulposes] on MRI of the [cervical spine] (not available for review), but there was no objective evidence in this file of any radiculopathy, neuropathy, or spinal stenosis. There was no mention by Dr. Greenwood of any ongoing [treatment]. No recent [office visit notes] by Dr. Greenwood were received. Assuming the report of the MRI is accurate, it would be prudent to limit [Plaintiff] to medium work. The only physical finding Dr. Greenwood documented was restricted [cervical spine range of motion] (not quantified). Dr. Greenwood gave [Plaintiff] a medium work capacity other than limiting him to 6 [hours per day] of work for unknown reasons. [Plaintiff's] neck disorder was not documented to be of a nature or severity to prevent him from working on a [full-time] basis at medium level work. [Plaintiff] also had [insulin dependent diabetes mellitus], but no specific impairment was attributed to this [diagnosis]. [Plaintiff] carries a distant [diagnosis] of [carpal tunnel syndrome] by EMG/NCV studies (no mention of clinical validation), but [Plaintiff] was not in much discomfort, and there was no evidence that this has been an ongoing problem. No impairment due to [carpal tunnel syndrome] was documented, and there is no need for any restrictions or limitations due to this reported [diagnosis].
>
> In summary, the only condition documented in this record to be causing any possible impairment was reported [herniated nucleus pulposes] of the [cervical spine]. While no actual loss of functionality was documented, it would be prudent to limit [Plaintiff] to [full-time] medium level work based on the herniations in combination [with] his age and diabetes.
>
> Recommendations
>
> No physical impairment was documented which would preclude [Plaintiff] from [return to work], [full-time], at a medium work capacity.

AR at 34-35.

On July 3, 2003, Defendant denied Plaintiff's appeal. AR at 31-33. Defendant stated that no actual loss of functionality was documented. AR at 32. After reviewing the sources on which it relied for its decision, Defendant provided its rationale, which bears a similarity to the conclusions of Dr. Porter:

> The information in the records does not support ongoing work restrictions to 6 hours per day as there is no indication that you have a condition that would affect your endurance. You do have diabetes mellitus but diabetes mellitus is common in the general working population. Dr. Greenwood estimated your ability to lift 50 pounds and this would attest to the fact that the pathology is not significant, nor does it make it dangerous for you to work at a medium level occupation. The findings of the small left sided disc herniation at C4-5 and degenerative disc disease with moderate stenosis and central disc herniation with extrusion at C6-7 are consistent with degenerative disc disease of the neck. The information does not indicate that you have a condition that would benefit from surgery. The EMG/NCV study did not indicate findings consistent with cervical radicupthy [*sic*]. Due to findings of the electrical evidence for carpal tunnel syndrome, it may be prudent to avoid highly repetitive assembly line type work, however, frequent use of your upper extremities is appropriate.

AR at 32; *compare* AR at 55-56; *infra* at pp. 5-6. Defendant further stated, "Based on our review of the information provided, we have determined that you have not provided the medical documentation to substantiate a disability as defined by your employer's Plan." AR at 33.

The parties agree on the applicable standard of review. The long-term disability plan gives discretionary authority to the plan administrator and other plan fiduciaries:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

AR at 257. The terms of the plan also require a claimant to provide proof of ongoing disability to Defendant's satisfaction. AR at 249. Further, the plan provides for a medical examination of a claimant, as follows:

Medical Examinations

We will have the right to have you examined at reasonable intervals by medical specialists of our choice. The examination will be at our expense. Failure to attend a medical examination or cooperate with the medical examiner may be cause for denial or suspension of your benefits.

AR at 250.

Plaintiff filed suit in this Court under 29 U.S.C. § 1132(a)(1)(B). Plaintiff then filed a motion seeking a reversal of the plan administrator's denial of benefits. Defendant filed a cross-motion, requesting either affirmance of its determination, both initially and on appeal, or judgment on the administrative record.

Although the cross-motions were scheduled for hearing before this Court on February 13, 2007, on that date the parties requested telephonically the opportunity to proceed without a hearing. Further, the Court has reviewed the parties' submissions and finds that the relevant law and facts have been set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

II.

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The parties agree that this Court should review Defendant's denial of benefits under the arbitrary and

capricious standard. This highly deferential review is appropriate when the ERISA-regulated plan at issue clearly grants discretion to the plan administrator. *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595, 597 (6th Cir. 2001).

The Sixth Circuit has described the arbitrary and capricious standard of review as "the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (internal quotations and citation omitted). When applying this standard, the Court must determine whether the administrator's decision was reasonable in light of the available record evidence. Although the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision was neither arbitrary nor capricious. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). Yet the deferential standard of review does not equate with using a rubber stamp – a court must review the quantity and quality of the medical evidence on each side. *Evans v. Unumprovident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006).

A decision reviewed according to the arbitrary and capricious standard must be upheld if it is supported by "substantial evidence." *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). Substantial evidence supports an administrator's decision if the evidence is "rational in light of the plan's provisions." *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). A court generally considers only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility in

accordance with the plan's terms. *Id*. The court's review thus is limited to the administrative record. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998).

In applying this standard of review, the Supreme Court has refused to give preferential weight to the opinion of a claimant's treating physician. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) (refusing to import the "treating physician" rule from social security cases to ERISA decisions). "[C]ourts have no warrant to require [ERISA plan] administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id*. at 834 (footnote omitted). Thus, a court may not deem a conflict between a plan's physicians and a claimant's treating physician a per se arbitrary and capricious decision.

Yet, "[b]y the same token, [a court] may not arbitrarily repudiate or refuse to consider the opinions of a treating physician." *Glenn v. Metropolitan Life Ins. Co.*, 461 F.3d 660, 671 (6th Cir. 2006) (citing *Nord*, 538 U.S. at 834). In *Glenn*, the Sixth Circuit reversed a plan administrator's denial of disability benefits as arbitrary and capricious, where the administrator selectively considered the treating physician's reports and provided no basis for not addressing a major factor of the claimant's pathology. *Id*. at 669-674 (citations omitted). Reliance on one medical opinion over another does not necessarily discredit an administrator's decision, nor is the use of an independent review of a medical file inherently objectionable. *Evans*, 434 F.3d at 877 (citations omitted). Thus, both the opinion of a treating physician and the conclusions of any independent reviewers of a claimant's medical file can be utilized by a plan administrator to reach a benefits determination.

Courts may also consider several other factors when reviewing an ERISA plan administrator's benefits determination. Performing a file review when a plan provides a right to an independent medical examination can raise a question about the thoroughness or accuracy of a benefits determination. *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005). Further, that an independent medical expert failed to rebut the contrary findings of a claimant's treating physician has served as one factor in a court's review of a benefits determination. *See Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston*, 419 F.3d 501, 510 (6th Cir. 2005) (citing *Nord*, 538 U.S. at 834).

Additionally, courts have seen fit to note other administrative decisions: "[a social security] determination, though certainly not binding, is far from meaningless." *Calvert*, 409 F.3d at 294. In *Glenn*, 461 F.3d at 668-669, the Sixth Circuit treated a plan administrator's failure to consider a social security decision of disability and its grant of benefits as a significant factor when reviewing the plan administrator's decision. Although the standards applicable to ERISA cases do not equate with the standards applicable to social security cases, a finding of disability within a social security context indicates that at least one entity concluded that medical evidence did support a finding of disability. Thus, courts consider a variety of factors in reviewing whether a plan administrator's determination was arbitrary and capricious.

### III.

Upon review of the administrative record, Defendant's independent reviewing physicians reach their opinions either from the absence of information in Dr. Greenwood's treatment records or from their own interpretation of the meaning of the language in those records. Each of the independent reviewing physicians all proceed through the same mode of analysis: they deem the

documentation presented insufficient to support the conclusions reached by Dr. Greenwood, so they reach different conclusions based on selective attention to available treatment information.

On September 19, 2001, Dr. Greenwood stated that Plaintiff could work six hours a day in half-hour increments with necessary changes in position; Dr. Moyer concluded that this statement meant Plaintiff could engage in "medium level" work. On November 13, 2001, Dr. Greenwood stated that Plaintiff was not a candidate for surgery at that time; Dr. Moyer interpreted that statement to mean that Plaintiff's symptoms were not so severe as to warrant surgery. Dr. Moyer noted that the neurologists' reports did not address several points; thus, the medical records did not clearly establish that the limitations on Plaintiff's range of motion derived from a problem in his neck and arms. Based on Dr. Moyer's report, Defendant denied Plaintiff disability benefits. But when Plaintiff appealed that decision, Defendant reinstated his benefits.

On October 17, 2002, Dr. Greenwood examined Plaintiff and reached the same conclusions as in his prior report: (1) Plaintiff should not return to work; (2) Plaintiff's condition had not improved; (3) the same limitations on range of motion applied; and (4) the same limitation on duration and manner of work, i.e., six hours per day on an intermittent basis, applied. On January 2, 2003, Dr. Porter provided an evaluation that relied heavily on Dr. Moyer's earlier – albeit eventually reversed – report. Dr. Porter, like Dr. Moyer, equated Plaintiff's ability to work six hours a day and to lift less than 50 pounds with the capacity to do medium level work. Dr. Porter also noted that no medical record indicated that Plaintiff's endurance was in question. Dr. Porter did not consider that severity of pain, rather than endurance, could affect Plaintiff's ability to work. Dr. Greenwood's reports do speak to Plaintiff's pain. Dr. Porter asserted that "the information in the records does not support ongoing work restrictions to 6 hours per day." Offering no further

explanation for that belief beyond the silence of the record, he concluded that Plaintiff can work eight hours a day.

Later, a third independent expert, Dr. Hopkins, also focused on a purported lack of documentation, which she stated did not show that Plaintiff's neck disorder reached a severity that would prevent him from full-time work. She also concluded that Dr. Greenwood gave Plaintiff a medium work capacity, although Dr. Greenwood never used that lanugage. Dr. Hopkins also stated that Dr. Greenwood's limitation to a six-hour workday was for an unknown reason. Yet Dr. Greenwood did describe Plaintiff's intermittent ability to stand, sit, and walk, as well as his inability to complete the range of motion for tasks required by his job. Additionally, Dr. Hopkins did not consider Dr. Greenwood's physical capacities evaluation of February 11, 2002 (from Plaintiff's social security claim) that Plaintiff included in a letter to Defendant on February 13, 2002. In that form, Dr. Greenwood states that Plaintiff experiences pain so severe that it interferes with work, sleep, and daily living.

Defendant's letter of July 3, 2003 denying Plaintiff's appeal does indicate that Plaintiff bears the burden of proof in establishing his continuing disability. *See* AR at 248. Thus, Defendant's reviewers' repeated contentions that the record does not support (or does not make clear) the basis for Dr. Greenwood's conclusions could warrant some consideration. Yet even granting that point for the sake of argument, Plaintiff has carried any such burden by presenting his treating physician's consistent statements that Plaintiff is limited to six hours of work a day, with additional restrictions.

Defendant's reviewers do not point to any record evidence to support their positive conclusion that Plaintiff can, in fact, work eight hours a day. Rather, they rely only on gaps in the record. Despite the highly deferential standard of review owed to an ERISA plan administrator's

determination, that determination must be supported by substantial evidence in the record. Although a court may not fault a plan administrator for crediting contrary evidence from a non-treating physician, here, Defendant's non-treating physicians do no rely on contrary evidence. Instead, they cite to the absence of information, so their contrary views do not serve to rebut Plaintiff's treating physician's opinion. Thus, Defendant has not offered a reasoned explanation for its decision, based on the evidence.

Additionally, the long-term benefits plan expressly provides for an independent medical examination of a claimant. In contrast, the plan makes no express provision for "reviewing" medical files. While the plan does not bar Defendant from proceeding without an independent medical examination (nor does the law require it), Defendant did elect not to seek a source of information available under the terms of the plan. Instead, Defendant preferred three medical file reviews in which each reviewer noted his or her belief of a deficiency in information. Yet rather than remedy that deficiency through a mechanism provided for by the plan, Defendant denied Plaintiff's benefits. As in *Calvert*, 409 F.3d at 295, the election not to secure an independent medical examination suggests a lack of thoroughness in reaching the benefits determination.

Finally, a social security determination of disability is at least not meaningless, especially when a plan requires a claimant to pursue social security benefits. *See Glenn*, 461 F.3d at 668-669. Here, the Social Security Administration ruled that Plaintiff was disabled. Yet nothing in this record indicates that Defendant gave any consideration to that determination, even if Defendant found it unpersuasive.

For all these reasons, Plaintiff's case is the exceptional one that meets the deferential standard of review that applies to ERISA cases. Defendant reached a decision for which it had no

reasonable explanation based on the administrative record. The record evidence does not support the divergence of Defendant's reviewers' conclusions from those of Plaintiff's treating physician. The silence of the record is not substantial evidence on which to disregard a treating physician's opinion. Accordingly, Defendant had no basis to adopt the reviewer's contrary opinions. The arbitrary and capricious nature of Defendant's decision is underscored by Defendant's election not to have Plaintiff independently examined and by its disregard for a social security determination of disability, despite provisions in the plan on both points. Thus, a review of the administrative record leads to the conclusion that Defendant acted arbitrarily and capriciously when it denied Plaintiff's appeal of Defendant's termination of long-term disability benefits. The Court will consequently reverse the decision of the plan administrator.

IV.

The Courts finds that a reasonable explanation for Defendant's denial of Plaintiff's benefits does not exist in light of the plan's provisions and in light of the evidence contained in the administrative record.

Accordingly, it is **ORDERED** that Plaintiff's motion to reverse Defendant's denial of benefits [dkt #11] is **GRANTED**.

It is further **ORDERED** that Defendant's motion to affirm its denial of benefits or, in the alternative, for judgment on the administrative record [dkt #13] is **DENIED**.

It is further **ORDERED** that Plaintiff shall submit to counsel for Defendant and this Court a proposed form of judgment on or before **March 16, 2007**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: February 15, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 15, 2007.

s/Tracy A. Jacobs  
TRACY A. JACOBS

---